## 42686. KILPATRICK v. THE STATE.
### (338 SE2d 274)

GREGORY, Justice.

Kilpatrick was convicted of murder. His motion for new trial was denied.* We affirm.

Kilpatrick had been dating Patricia Wright. Around midnight on October 9, 1982, two friends of Kilpatrick went to his house and found him standing over a motionless Wright. Kilpatrick told the friends he did not know what was wrong with Wright and asked them to take her to the hospital. The two friends decided they were too intoxicated to drive, however. Kilpatrick then went to a neighbor and told him Wright was subject to blackout spells. An ambulance and the police were called. Medical attendants found no blood on Wright's blouse, but did find blisters and burns on one foot. Later, a closer examination revealed a wound in Wright's chest. An autopsy report listed a fatal stab wound to the heart as the cause of death.

Police could find no puncture in Wright's blouse, however. They

---

* The crime was committed on October 2, 1982, and defendant was indicted by a Greene County Grand Jury during the October 1982 term. The jury reached a verdict and sentence was handed down on March 2, 1983. A motion for new trial was made on March 29, 1983 and amended on June 10, 1985. The motion for new trial was denied on August 5, 1985. Notice of Appeal was filed on August 22, 1985. A transcript of the proceedings was certified on September 6, 1985 and filed in the Supreme Court on September 18, 1985.

did find bloodstains on two beds and the side of a bathtub in Kilpatrick's house. One police officer noticed scratch marks on Kilpatrick's face. Kilpatrick told the officer that an ex-girl friend had scratched him at a nightclub which he and Wright had visited earlier that night. Human blood was found under Wright's fingernails.

Kilpatrick offered several explanations to police on the night of Wright's death. He said she may have been stabbed at the nightclub, or may have fallen on a stake in his yard and not realized she was seriously injured. Kilpatrick told police that after Wright fell in his yard, she got into the bathtub fully clothed and burned her foot on hot water.

Police later found a bloodstained knife under sand and gravel in Kilpatrick's front yard. Kilpatrick denied any knowledge of the knife.

At his trial, Kilpatrick testified that he and Wright had gone to a nightclub and argued over his dating other women. He testified that later that night Wright came at him with a knife, tripped and accidentally stabbed herself. He said Wright did not know she had been stabbed and went to take a bath, where he later found her unconscious and laid her on his bed. He testified that he changed Wright's blouse after the stabbing but did not know what had happened to it. The blouse in question was never found.

1. Kilpatrick contends the trial court erred in giving an unsolicited *Allen* instruction or "dynamite charge" to the jury without indication that the jury was deadlocked.

The jury was given the case at 10:40 a.m. Around noon a one-hour lunch break was taken. Deliberations then continued until 3:40 p.m. when the *Allen* charge was given. After the charge, deliberation again continued until a verdict was reached at 5:50 p.m. " 'The length of time a jury may be required to deliberate (before giving the Allen charge) is within the discretion of the trial judge and will not be controlled unless there is a manifest abuse of discretion.' " *Helton v. State,* 166 Ga. App. 662 (2) (d) (305 SE2d 592) (1983). The fact that the jury continued to deliberate for several hours after the charge is a good indication the trial judge properly assessed the situation.

Kilpatrick's contention that the trial court's use of the *Allen* charge was premature because the jury had not indicated there was a deadlock is contrary to the decision in *Riley v. State,* 175 Ga. App. 710 (8) (334 SE2d 38) (1985). See Daniel, Georgia Criminal Trial Practice, § 24-20 (1984), for a discussion of the *Allen* charge in Georgia law. Under these facts the decision was one for the trial court's discretion.

2. Kilpatrick next contends the trial court erred in not giving a charge to the jury on involuntary manslaughter as a lesser included offense. Kilpatrick did not request the charge nor object at trial to its absence. Kilpatrick acknowledges *State v. Stonaker,* 236 Ga. 1 (222

SE2d 354) (1976), which holds there is no error for failure to give a charge on a lesser included offense without a request. Nonetheless, Kilpatrick argues that his case comes within an exception to the general rule whereby the failure to charge means the jury lacks the proper guidelines for determining guilt or innocence, and cites *Spear v. State*, 230 Ga. 74, 75 (195 SE2d 397) (1973).

This court in *Jackson v. State*, 239 Ga. 40 (1) (235 SE2d 477) (1977), made it clear cases holding that a trial court must charge, even without request, the law of manslaughter whenever there is some evidence to support the charge would not be followed after *Stonaker*. This ruling does not affect *Spear v. State*, which dealt with the absence of a charge on character evidence, or criminal charges in contexts other than those involving lesser included offenses. Cf. *Johnson v. State*, 253 Ga. 37, 38 (315 SE2d 871) (1984).

3. After the *Allen* charge discussed in Division 1 and several more hours of deliberations, the jury asked to talk to the judge, and the following colloquy took place in the courtroom:

"THE COURT: I understand you have a question that you wish to address to me. Is that correct?

"MR. FOREMAN: Yes, sir.

"THE COURT: Alright, sir. State the question, please.

"MR. FOREMAN: We have a locked jury and the question is this person is on their belief but not on the evidence that is before them.

"THE COURT: And what is your question to me, now?

"MR. FOREMAN: You, in the reading of the law, you told us to deal with the facts and not our personal feelings but on the evidence that we have before us.

"THE COURT: So, what you are asking me to do is reread that part of the law to you. Is that correct?

"MR. FOREMAN: Yes, sir."

The judge gave the following instructions:

"THE COURT: Ladies and Gentlemen, at this time I am going to give you certain very brief, additional instructions. I charge you that a reasonable doubt is a doubt of a fair minded, impartial juror honestly seeking the truth. It is not an arbitrary nor capricious doubt but is a doubt arising from a consideration of the evidence, from a conflict in the evidence or from a lack of evidence. If, after giving consideration to all the facts and circumstances of the case, your minds are wavering, unsettled and unsatisfied, then that is the doubt of which the law speaks, and you should acquit the defendant. If that doubt as to the defendant's guilt does not exist in your minds, then you should convict the defendant. Ladies and Gentlemen, your verdict should be based on the evidence that you have heard or reasonable inferences that you can draw therefrom. At this time I will ask you to return to the jury room and continue your deliberations."

Kilpatrick contends the instruction dealt with reasonable doubt, and thus was not responsive to the jury's request and pointed to guilt.

We interpret the foreman's question to mean, "Must the jury base its verdict on the evidence or may the verdict be based on a belief not founded on the evidence?" The charge appropriately told the jury that the verdict should be based on the evidence and reasonable inferences from the evidence. Furthermore, the references to reasonable doubt merely reminded the jury of the standard by which the evidence was to be weighed.

*Judgment affirmed.* 

DECIDED JANUARY 8, 1986.

*H. Samuel Atkins, Jr.,* for appellant.

Richard Kilpatrick, *pro se.*

*Joseph H. Briley, District Attorney, Alberto C. Martinez, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Staff Assistant Attorney General,* for appellee.