## A01A1939. HARRELL v. THE STATE.
(560 SE2d 295)

MIKELL, Judge.

Shawn Maurice Harrell was convicted of kidnapping with bodily injury, aggravated assault, and criminal damage to property in the second degree by a Henry County jury. On appeal, he argues the following: (1) the trial court erred by denying his motion for directed verdict; (2) the jury verdict is contrary to the weight of the evidence; (3) the trial court should have granted his motion for new trial on the issue of jury misconduct; (4) the trial court erroneously instructed the jury; and (5) his trial counsel was ineffective. We disagree and affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses."[1]

---

[1] (Citations and punctuation omitted.) *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997).

Construed in the light most favorable to the verdict, the evidence shows that Harrell approached Joey Long at a gas station. He asked Long to give him a ride, and Long agreed, as he was going to his girlfriend's house which was near where Harrell needed to go. When they arrived at Harrell's destination, which Long thought was Harrell's parent's house, Long stopped his truck so that Harrell could get out. Instead of exiting the truck, however, Harrell began talking to a man who had come out of the house. When a second man approached the back of Long's truck, Long drove off.

Long testified that Harrell pulled something that Long thought was a gun from under his jacket and pointed it at him. Long recalled that he told Harrell, "Please don't shoot me. My goodness, please don't shoot me. I give [sic] you a ride down here." Long stopped the truck and thinking that the gun was still pointed at him, he stepped out and tried to alert a bystander. After his attempts failed, Long got back into the truck and asked Harrell what he wanted him to do. Harrell instructed Long to return to the house they had just left.

Long stopped after he passed the house and told Harrell to get out of his truck. Long testified that at that point, Harrell attacked him with a knife, cutting him, and then held the knife to Long's throat and asked for money. When Long produced only $1, Harrell searched Long's truck for more money. While Harrell searched, Long tried to escape and Harrell grabbed Long by the back of his shirt, cutting the back of Long's neck. Long was able to escape Harrell's grasp and exit the truck.

As he ran away from the truck, Long looked back and saw that Harrell was breaking the windows of the truck with a wooden bat. Harrell then told Long to get back into the truck, and after Long complied, Harrell broke another window, shattering the glass on Long. Long then drove to the home of his girlfriend and was taken to the hospital later that evening. The hospital personnel called the police.

1. Harrell argues that the trial court's denial of his motion for directed verdict as to the kidnapping with bodily injury and criminal damage to property charges was erroneous. The standard of review for the denial of a motion for directed verdict of acquittal or a motion for new trial is the same as that utilized under *Jackson v. Virginia*[2] when the sufficiency of the evidence is challenged.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[3] Harrell contends that the state did not prove its case because there was no evidence of asportation.

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] OCGA § 16-5-40 (a).

We disagree. "The asportation element [of kidnapping] may be satisfied by slight movement on the part of the victim."[4] Here, Long testified that Harrell told him to return to the house they had left. This testimony was sufficient to support a rational trier of fact's finding that the state proved the asportation element of the offense.

"A person commits the offense of criminal damage to property in the second degree when he [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500."[5] Harrell argues that there was no testimony establishing that the value of the damage exceeded $500. Again, we disagree. The value of damage to the property of another may be established by a lay witness's opinion as to the property's value, provided the witness states the factual predicate upon which his opinion is based.[6] The state questioned Long's mother, Karen Cottner, about the damage to the truck. When asked about the cost to repair the windows, she replied: "the windows on the side were electric and I think everything had to be disassembled to put new windows back in it. Between the three windows, I would say that the damages exceeded $500." Based on this testimony, any rational trier of fact could conclude that Harrell was guilty of criminal damage to property in the second degree.

2. Next, Harrell argues that the jury verdict was contrary to the weight of the evidence; thus, the trial court should have granted his motion for new trial. As we concluded in Division 1, the evidence was sufficient to support Harrell's convictions for kidnapping with bodily injury and criminal damage to property. As to the charge of aggravated assault, we also find that the evidence was sufficient to support Harrell's conviction.

A person commits the offense of aggravated assault when he assaults with a deadly weapon, which, when used offensively against a person, is likely to or actually does result in serious bodily injury.[7] Long testified that Harrell assaulted him with a knife, cutting him on his arm and neck. State's Exhibits 3 and 4 display the cuts on Long's arm and neck. Though Harrell testified that he was defending himself when he swung at Long with his box cutter, this testimony does not render the evidence against Harrell insufficient. Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve.[8] Since the testimony of a single witness is generally sufficient to establish a fact,[9] Long's testimony alone authorized a

---

[4] (Punctuation and footnote omitted.) *Shue v. State*, 251 Ga. App. 50, 51 (1) (553 SE2d 348) (2001).

[5] OCGA § 16-7-23 (a) (1).

[6] *Spann v. State*, 250 Ga. App. 354, 355 (551 SE2d 755) (2001).

[7] See OCGA § 16-5-21 (a) (2).

[8] *McLeod v. State*, 245 Ga. App. 668-669 (538 SE2d 759) (2000).

[9] OCGA § 24-4-8.

rational trier of fact to find Harrell guilty beyond a reasonable doubt of aggravated assault.

3. In his third enumeration of error, Harrell challenges the jury verdict by arguing that he is entitled to a new trial because the jury deliberated while some of its members were not present. We disagree.

All 12 jurors testified at the hearing on Harrell's motion for new trial. Harrell relies on the testimony of two jurors, Carole Elliott and Olivia McRae. Elliott testified that three jurors may have been out of the room on a smoking break when one of the jurors found an answer to a question that the jury planned to ask the judge in their notes. Elliott also testified, however, that the jury did not discuss the case when less than 12 people were present. When McRae was asked if the case was discussed when some of the jury members were not present, she replied, "In a way." McRae was not asked to explain her answer. On cross-examination, however, McRae testified that all of the jurors were present when the jury reached its verdict.

Of the remaining ten jurors who testified at the hearing on this issue, eight, including the foreman, testified that the case was not discussed without the presence of all twelve jurors. The foreman specifically recalled that when he returned from a smoking break, the jury had not answered any questions in his absence. One juror did not recall the deliberation at all. The last juror was out of the room at the relevant time, but testified that he had no reason to believe that the case was discussed out of his presence.

"The general rule in this state is that jurors may not impeach their own verdict."[10] Exceptions to that rule are made when "extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberation."[11] This Court can also set aside a jury verdict on the grounds of irregular jury conduct if it concludes "that the conduct was so prejudicial that the verdict is inherently lacking in due process."[12] The circumstances in this case do not warrant a departure from the general rule. Further, based on the testimony of the jurors and each member's concurrence in the verdict when polled, we cannot conclude that the conduct, if it occurred, was so prejudicial that it resulted in a verdict that lacked due process. Moreover, in the face of somewhat disputed evidence and the trial court's role to determine the jurors' credibility, we must rely on the trial court's finding of fact that no misconduct occurred.[13] Accordingly, we conclude that the

---

[10] (Footnote omitted.) *Glover v. State*, 274 Ga. 213, 215 (3) (552 SE2d 804) (2001).
[11] (Punctuation and footnote omitted.) Id.
[12] (Footnote omitted.) *Butler v. State*, 270 Ga. 441, 444 (2) (511 SE2d 180) (1999).
[13] See *Lyons v. State*, 244 Ga. App. 658, 661 (1) (535 SE2d 841) (2000).

trial court's denial of Harrell's motion for a new trial on this ground was correct.

4. Harrell next argues that the trial court erred in its charge to the jury in four respects: (1) it failed to charge on the lesser included offenses of kidnapping, false imprisonment, and criminal trespass; (2) its responses to two jury questions were erroneous; (3) the trial court's "dynamite" charge was in error; and (4) the charge, as a whole, denied Harrell a fair trial.

(a) In this case, there is no dispute that Long's bodily injury was caused by Harrell, who admitted that he swung at Long with a box cutter. Although "kidnapping is a lesser included offense of kidnapping with bodily injury, lacking only the element of bodily injury,"[14] since the evidence established without dispute the commission of the greater offense, Harrell was not entitled to a charge on kidnapping.[15]

The trial court did not err in refusing to give Harrell's requested charge on false imprisonment as a lesser included offense of kidnapping with bodily injury. The charge was not warranted by the evidence since Long's detention was accompanied by the element of asportation.[16] The evidence does not show that Long was falsely imprisoned without being forced to drive where Harrell instructed him to go. Thus, there is no evidence that Harrell was guilty of false imprisonment.

"Criminal trespass is committed when one intentionally damages any property of another without his consent and the damage thereto is $500.00 or less or when he knowingly and maliciously interferes with the possession or use of the property of another person without his consent."[17] Harrell argues that there is little or no proper evidence of the damage to Long's vehicle, and thus the jury could have inferred less than $500 in damage. We disagree.

Value of the property may be established by the owner's testimony stating the cost of repair to the property combined with photos of the damaged item.[18] As discussed in Division 1, Long's mother testified that the cost to repair the windows exceeded $500 and there was no evidence offered to refute her testimony. Additionally, two photographs of the truck were admitted into evidence. These factors, in conjunction with Harrell's testimony that "I hit the driver's side window [with a bat], was pissed off and I started knocking out the other two windows," was sufficient to support the jury's finding that

---

[14] *Hunter v. State*, 228 Ga. App. 846 (493 SE2d 44) (1997).

[15] *Gilliam v. State*, 237 Ga. App. 476, 479 (2) (517 SE2d 348) (1999).

[16] *Brown v. State*, 232 Ga. App. 787, 791 (2) (504 SE2d 452) (1998).

[17] (Citation, punctuation and emphasis omitted.) *Robinson v. State*, 217 Ga. App. 832, 833 (1) (459 SE2d 588) (1995).

[18] See *Holbrook v. State*, 168 Ga. App. 380 (1) (308 SE2d 869) (1983).

Harrell destroyed three windows and the cost to repair them exceeded $500. Thus, the evidence did not warrant a charge on misdemeanor criminal trespass.

(b) During its deliberation, the jury asked: "[M]ust written documentation of the costs of damage on the truck be a part of the deliberations?" The judge responded, "The answer to that is no." Harrell argues that the trial court should have recharged the jury on criminal damage to property in response to its question. We disagree. "[W]here the jury requests further instructions upon a particular phase of the case, the court in its discretion may recharge them in full, or only upon the point or points requested."[19] The court properly charged the jury on criminal damage to property in its initial charge. Thus, the trial court did not abuse its discretion by not repeating the charge when it answered the jury's question.

The jury also asked: "[I]n the first count of the indictment, does the victim have to fear for his safety and well-being in order to justify the change [sic]? Yes or No? Circle one." The trial judge circled "no." Defense counsel contends that the jury should not have been able to limit the court to a yes/no answer and that the trial court should have recharged the jury on kidnapping with bodily injury. We disagree.

The trial judge charged the jury on kidnapping with bodily injury in its original charge and again in response to the jury's request to be recharged on kidnapping. We find that the response of the trial court to the jury's question accurately reflected the law and was not misleading. "While the court has a duty to recharge any part of the charge at the request of the jury, the extent and character of any supplementary instructions are within the discretion of the court."[20] By only answering the jury's specific question, we find that the trial court did not abuse its discretion.

(c) After the jury informed the court that it was split nine to three on Count 1, without revealing the direction of the split, the court charged:

> Ladies and gentlemen, a jury in Henry County will have to reach a verdict on this decision and I don't think that we could possibly impanel one that's better-qualified than you are. You're an excellent jury and I'm sure that if you work a little longer on this matter that you'll be able to resolve it. I'm going to give you that opportunity to continue working on it and see if you can't work your differences out.

---

[19] (Punctuation, footnote and emphasis omitted.) *Duffie v. State*, 273 Ga. 314, 316 (2) (540 SE2d 194) (2001).

[20] (Citations omitted.) *Welch v. State*, 257 Ga. 197, 198 (1) (357 SE2d 70) (1987).

Harrell argues that this charge forced some of the jurors to surrender their decisions to avoid a mistrial. We disagree.

"The issue in reviewing such [a] charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors."[21] The language of the charge given was not coercive and did not force the jurors to abandon their convictions.[22]

(d) Finally, Harrell argues that the charge as a whole was erroneous. Conversely, we conclude that "[w]hen considered as a whole, the charge of the court was full, complete and fair."[23]

5. In his final enumeration of error, Harrell contends that his trial counsel was ineffective because he failed to: (1) object to Cottner's hearsay testimony; (2) tender certified copies of Long's convictions; (3) adequately investigate Long's medical condition; (4) adequately prepare so as to rebut effectively the state's presentation of Long as a sympathetic victim; and (5) request a charge on the alleged victim's duty to retreat. We disagree.

"[I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial."[24] Furthermore, "[a] court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one [and its] finding of effectiveness must be upheld unless clearly erroneous."[25] We find that Harrell has not made either showing.

(a) Cottner testified that Long was mentally disabled because of head injuries he sustained in two accidents. When she explained Long's injuries, Cottner repeated statements that his doctors had made to her during the course of Long's treatment. Harrell argues that trial counsel should have objected to this testimony because it contained hearsay statements.

Trial counsel, Russell Pope, testified that he did not object for strategic reasons. Pope stated: "I wanted her to go ahead and explain to the jury how she perceived her son to be. . . . [A]nd that he was barely capable of functioning . . . so that when they had the opportunity to view Mr. Long himself, they would see the disparity or the dis-

---

[21] (Citation and punctuation omitted.) *Black v. State*, 255 Ga. 668, 671 (2) (341 SE2d 436) (1986).

[22] Id.

[23] *Walls v. State*, 148 Ga. App. 112, 113 (3) (251 SE2d 103) (1978).

[24] (Citations omitted.) *Butler v. State*, 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[25] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

crepancy between her description . . . and the actuality of Mr. Long." Since "[d]ecisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy,"[26] we find no error in the trial court's conclusion that trial counsel was not ineffective for failing to object to Cottner's testimony.

(b) Next Harrell contends that trial counsel was ineffective because he failed to tender certified copies of Long's convictions into evidence. Long testified that he was on probation for shoplifting and DUI. Harrell argues that had trial counsel discussed these convictions in detail, he would have damaged Long's credibility. While we agree that trial counsel could have further impeached Long with certified copies of these convictions, any such deficiency in counsel's performance could not have prejudiced Harrell because the jury was made aware of the convictions by Long. Accordingly, no reasonable probability exists that, but for trial counsel's failure to introduce the certified convictions, the result of the proceeding would have been any different.[27]

(c) Harrell argues that his trial counsel failed to adequately investigate Long's medical condition, which enabled the state to effectively garner sympathy for Long without resistance from the defense. Pope testified that he did not think it was necessary to subpoena Long's medical records because they were not relevant. Further, he wanted the jury to see the disparity between how Long appeared and how he had been described. Again, there is no reasonable probability that had trial counsel requested Long's medical records in the course of his preparation for trial, the outcome of the proceeding would have been any different.[28]

(d) Next, Harrell contends that trial counsel should have better prepared the defendant to testify and that his failure to do so constituted ineffective assistance of counsel. Both lawyers who represented Harrell testified that initially, Harrell cancelled several of the meetings they scheduled to prepare him for trial, but they eventually met with him by telephone and in person several times. One of the lawyers testified that he drilled Harrell during the meeting to give him an idea of what to expect at trial. Harrell has not shown that trial counsel's performance was deficient in this regard.

(e) Lastly, Harrell argues that trial counsel should have requested a charge on the alleged victim's duty to retreat and the lesser included offense of false imprisonment. We held in Division 4 of this opinion that a charge on false imprisonment was not warranted. Regarding the duty to retreat, Harrell "does not provide this

---

[26] (Footnote omitted.) *Shelnutt v. State*, 242 Ga. App. 723, 726 (4) (531 SE2d 122) (2000).

[27] *Ross v. State*, 231 Ga. App. 793, 798 (6) (499 SE2d 642) (1998).

[28] Id.

Court with any indication regarding what the jury should have been charged or [with] a showing that such a charge was warranted and that such a charge would have affected the outcome of the trial."[29] Accordingly, we reject Harrell's claim of ineffective assistance of counsel.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 13, 2002 — ▮

*O'Brien & Koontz, Dennis C. O'Brien, David J. Koontz,* for appellant.

*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Assistant District Attorney,* for appellee.

---

[29] *Holloway v. State*, 245 Ga. App. 510, 513 (2) (b) (537 SE2d 708) (2000).