## A07A2171. GARCIA v. THE STATE.
(658 SE2d 904)

PHIPPS, Judge.

On appeal from his conviction on three counts of aggravated assault, Joe Mark Garcia argues that the evidence was insufficient and that the trial court erred when it admitted his statement to police, when it denied his motions to strike a juror and to reseat two jurors struck by the state, and when it admitted hearsay evidence. Garcia also argues that both trial and appellate counsel were ineffective. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence.[1] We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence shows that Garcia, Juan Mondragon, and other members of the Northside Locos gang drove to the residence of a member of a rival gang for the purpose of fighting with him. On arriving at the rival gang member's apartment, Mondragon pulled out a gun and shot into the apartment. Three of the rival gang member's relatives were in the apartment at the time: a mother and her infant son, who were hit by splintered glass, and a male cousin, who was shot in the leg. Garcia then fled the scene.

1. Garcia argues that his statement to a detective is inadmissible because it was given with some hope of benefit and was thus involuntary. We disagree.

"To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[3] But "[t]he fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it."[4] "A trial court's determination after a *Jackson-Denno* hearing that a statement was voluntarily made will not be disturbed on appeal unless it was clearly erroneous."[5]

To show that his statement was involuntary, Garcia cites the detective's testimony that he was a "friend" who had helped Garcia get a job; that he had sometimes obtained the dismissal of charges against other defendants; and that he had told Garcia that he would

---

[1] *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).

[2] *Jackson v. Virginia*, 443 U. S. 307, 320 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA § 24-3-50.

[4] OCGA § 24-3-51.

[5] *Smith v. State*, 281 Ga. App. 91, 94 (3) (635 SE2d 385) (2006) (footnote omitted).

"help [him] in any way that [he] could, as much as [he] could, [as much as] they would allow [him] to." The detective, however, expressly denied doing or saying anything that would make Garcia think that he would try to have the charges dismissed or reduced or his punishment lessened. Because the detective did not provide Garcia with any assurance that his assistance would prove beneficial, the trial court's determination that Garcia's statement was voluntary was not clearly erroneous.[6]

2. Garcia contends that the evidence was insufficient to sustain his conviction because he did not participate in the shooting. We disagree.

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[7] "A person is concerned in the commission of a crime only if he: . . . (3) [i]ntentionally aids or abets in the commission of the crime; or (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime."[8]

> Mere presence at the scene of a crime and mere approval of the criminal act are not sufficient evidence to establish that the defendant was a party to the crime. Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary, and may be inferred from the defendant's conduct before, during, and after the crime.[9]

If the state presents sufficient evidence that associates shared "a common design to do an unlawful act," then "any act done in pursuance of that association by any one of the associates would, in legal contemplation, be the act of each of them."[10]

Here, Garcia's own statement showed that he, Mondragon, and other gang members went to the rival gang member's apartment with the common purpose of starting a fight, that he was present when the crimes were committed, and that he fled the scene afterward. This evidence was sufficient to authorize Garcia's conviction as a party to those crimes.[11]

---

[6] Id. (police officer's promise to help defendant with a drug problem did not bear on the question of punishment and did not render the defendant's statement involuntary).

[7] OCGA § 16-2-20 (a).

[8] OCGA § 16-2-20 (b).

[9] Hill v. State, 281 Ga. 795, 797 (1) (a) (642 SE2d 64) (2007) (citations and punctuation omitted).

[10] Michael v. State, 281 Ga. App. 289, 292 (1) (635 SE2d 790) (2006) (citation and punctuation omitted).

[11] See Hill, supra (evidence was sufficient to sustain felony murder conviction where defendant participated in armed robbery targeting restaurant worker and was willingly

3. Garcia contends that the trial court erred when it (a) failed to strike a juror who had admitted bias and (b) denied his challenge under *Batson v. Kentucky*[12] to the state's peremptory strikes of two African-American jurors.

(a) The record shows that when a potential juror was asked whether her relationship as sister-in-law to a Federal Bureau of Investigation agent would lead her to give more credence to a police witness, she responded, "Yes." The trial court immediately asked her whether she would "[n]onetheless . . . be prepared to weigh the testimony of police officers like any other witness." She answered that she "would judge anybody as an individual," and that despite her "bias," she would "do [her] best" to weigh the testimony fairly. Commenting that "either you can or you can't," the trial court asked her once again whether she could set her bias aside and "fairly consider the testimony anew, from the beginning." The potential juror responded, "Yes."

> Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. The decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion.[13]

The fact that this potential juror expressed a bias does not require the conclusion that she could not serve. Her reservations were not based on any relationship with the defendant, and she had no "extrajudicial knowledge of the events at issue."[14] The trial court's investigation here, moreover, was limited to the clarification of her answer concerning the extent of her bias.[15] When that investigation culminated in a direct question whether she could set the bias aside, she responded affirmatively. There was no abuse of discretion here.[16]

---

present when worker was killed); *Michael,* supra (evidence was sufficient to sustain aggravated assault conviction where the defendant helped her boyfriend pack guns, saw him pick up a stolen gun from the floor of their car, and did not warn police that her boyfriend had the gun and might shoot).

[12] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[13] *Foster v. State*, 271 Ga. App. 426, 428 (2) (609 SE2d 751) (2005) (citations omitted).

[14] *Reddick v. State*, 264 Ga. App. 487, 495 (5) (a) (591 SE2d 392) (2003) (citations omitted).

[15] See *Foster v. State*, 258 Ga. App. 601, 608 (3) (574 SE2d 843) (2002).

[16] *Reddick,* supra at 496 (trial court did not abuse its discretion when it seated a juror who expressed bias but who later said that she could decide the case on the evidence).

(b) In order to show a *Batson* violation,[17] a defendant must prove that the state purposefully engaged in racial discrimination through its use of peremptory strikes.

> Following a defendant's showing of a prima facie case of racial discrimination, the reasons provided by the State to overcome any such presumption of racial discrimination must be concrete, tangible, race-neutral, and neutrally applied. In some cases, however, a trial court may determine that improper discriminatory motive underlay the exercise of a peremptory challenge when the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual.[18]

"On appeal, great deference must be extended to a trial court's determination that no *Batson* violation has occurred."[19]

Here, the thirty-four member jury pool contained three African-Americans. One was excused for cause. After the state used two of its six peremptory strikes to unseat both remaining African-Americans, the trial court ruled that this made out a prima facie case of discrimination. The state explained that the first struck juror had dozed during the proceedings and had stated that she could not "sit in judgment" in a death penalty case, leading the prosecuting attorney to conclude that she might be uncomfortable sitting in judgment on any case. The state also explained that the other juror, a Kenyan immigrant, had lived in the county for only five years and knew someone who had been falsely accused and convicted of murder in Fulton County. The state concluded that the first juror was inattentive and hesitant, that the second juror had inadequate ties to the community, and that both jurors would likely favor criminal defendants. The trial court agreed that the first juror had seemed hesitant, determined that the state had struck other white and Asian-American jurors for similar reasons as the second juror, and ruled that the state's explanations were sufficiently race-neutral. There was no error here.[20]

---

[17] See *Batson,* supra.

[18] *Woolfolk v. State,* 282 Ga. 139, 141-142 (3) (644 SE2d 828) (2007) (citations and punctuation omitted).

[19] Id. at 141 (3) (citation omitted).

[20] See *Reed v. State,* 279 Ga. 81, 82 (2) (610 SE2d 35) (2005) (inattentiveness was sufficiently neutral explanation for peremptory strike); *Medina v. State,* 247 Ga. App. 821, 823 (1) (b) (545 SE2d 366) (2001) (upholding strike of 22-year-old student with few ties to the community).

4. Garcia argues that his trial was "fraught with impermissible hearsay testimony," admitted either without or over objection, and that he was prejudiced thereby. Garcia objects to testimony that (a) one of the victims, who did not appear at trial, told a police officer that he looked outside immediately after the shooting and could tell by the shooters' clothing that they were gang members; (b) a second absent eyewitness told the same officer that she saw Garcia at the scene; (c) a third absent eyewitness told the same police officer that there were two shooters; and (d) two eyewitnesses who appeared at trial had been told that someone had banged on the apartment window with a gun.

As to the first two instances of alleged hearsay, Garcia's own statement showed that he was a gang member and present at the scene of the shooting, and the jury saw and heard evidence concerning his gang tattoos. Hearsay tending to prove these facts were therefore cumulative, and any error was harmless.[21]

As to the remaining three instances of alleged hearsay, the state did not argue that Garcia himself possessed or used a gun or that he was the person banging on the window. Because questions as to whether there were two shooters or one and whether an unspecified man banged on the window were not relevant to the determination of Garcia's guilt as an abetter of the crime, hearsay evidence to that effect was irrelevant and its admission was harmless.[22]

5. In view of our holdings in Divisions 3 and 4 above, Garcia's claims concerning ineffective assistance of counsel lack merit.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 7, 2008.

*Lawrence Lewis*, for appellant.
*Daniel J. Porter, District Attorney, Jennifer M. Taylor, Assistant District Attorney*, for appellee.

---

[21] See *Jones v. State*, 272 Ga. 154, 157 (4) (527 SE2d 543) (2000) (admission of cumulative or irrelevant and nonprejudicial hearsay evidence was harmless).
[22] Id.