## A08A2073. TAYLOR v. THE STATE.

(674 SE2d 81)

JOHNSON, Presiding Judge.

A Clayton County jury found Xavious Taylor guilty of two counts of aggravated assault. Taylor appeals, challenging the sufficiency of the evidence. He also claims that he received ineffective assistance of counsel and that the trial court committed numerous errors at trial. For reasons that follow, we affirm.

1. In reviewing Taylor's sufficiency challenge, we construe the evidence in the light most favorable to the jury's verdict.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find Taylor guilty beyond a reasonable doubt.[2]

So viewed, the evidence shows that Taylor was a member of a rap group called the Hit Squad. On June 4, 2004, the Hit Squad and another rap group known as the Southside Mafia performed at a skating rink. Several members of the Hit Squad took offense to the Southside Mafia's performance, and an altercation arose between the two groups. The police intervened, and the groups dispersed, but agreed to meet at a local park two days later to fight and "settle it."

On the day of the fight, members of the Southside Mafia and various supporters went to the park armed with guns. The park was crowded, with people taking part in various recreational activities. Among the visitors was a grandmother and her four-year-old grandson, who was trying out a new bicycle.

As the Southside Mafia members waited in the park, a red car occupied by Taylor entered the parking lot. The car approached an area where the Southside Mafia's leader was standing, and a gun emerged from Taylor's window. Shots were fired almost immediately. Taylor admitted to police that he discharged a weapon from the car three times, and the evidence shows that people associated with the Southside Mafia also fired their guns. The gunshots continued and moved toward the parking lot as the red car left the area.

Although they tried to run for cover, the grandmother and her four-year-old grandson were caught in the gunfire. A bullet struck the grandmother in the wrist, severely injuring her hand. The child was shot in the chest and died from his wounds.

(a) The jury found Taylor guilty of aggravated assault on the grandmother and the child, but not guilty of two felony murder counts involving the child and possessing a weapon during the commission of a crime. Taylor now challenges the aggravated assault

---

[1] *Garcia v. State*, 290 Ga. App. 164 (658 SE2d 904) (2008).

[2] Id.

findings on appeal, arguing that the state offered no evidence that he shot toward the victims, encouraged anyone to shoot at them, or was at the scene when they were shot. He notes that experts could not determine what type of gun caused the injuries and that, according to one witness, the car in which he was riding left the park before the victims were struck.

Under OCGA § 16-2-20 (a), however, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." A person is concerned in the commission of a crime if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime."[3] Mere presence at the scene or approval of the criminal act is not sufficient. Instead, "[p]roof that the defendant share[d] a common criminal intent with the actual perpetrators is necessary, and may be inferred from the defendant's conduct before, during, and after the crime."[4]

Based on the evidence presented, the jury was authorized to find that Taylor was a party to the aggravated assaults. Although it is unclear who fired first in the melee, Taylor admittedly shot his weapon, and the jury could conclude that he began the gun battle by pointing his gun out of the car. The jury could also find that, even if the victims were not hit by Taylor's bullets, they were struck when Southside Mafia members fired back at the car occupied by Taylor. Simply put, Taylor's group and Southside Mafia members agreed to meet at the park to "settle" a dispute. Taylor knowingly took part and pointed a gun out of the window as the red car approached the Southside Mafia leader, conduct certain to draw fire from Southside Mafia members in the park.

Under these circumstances, a reasonable factfinder could determine that Taylor and the other participants in the gun battle shared a common criminal intent — to assault each other with guns, intent that then transferred to the innocent bystanders.[5] And given Tay-

---

[3] OCGA § 16-2-20 (b) (4).

[4] (Citation and punctuation omitted.) *Garcia*, supra at 165 (2).

[5] See *Smith v. State*, 267 Ga. 372, 375 (5) (477 SE2d 827) (1996) (jury authorized to find defendant who willingly engaged in gunfight on public street responsible for death of innocent bystander, even though another man fired bullet that struck victim; "the death was directly caused by the gunfight, in which the jury was authorized to find [the defendant] was a willing participant"); *Steele v. State*, 216 Ga. App. 276, 276-277 (1) (454 SE2d 590) (1995) (defendant who participated in gunfight was a party to the death of innocent bystander, even though fatal shot was fired by rival in the fight), disapproved on other grounds, *Kennebrew v. State*, 267 Ga. 400, 404 (4), n. 2 (480 SE2d 1) (1996); see also *Happoldt v. State*, 267 Ga. 126, 127 (1) (b) (475 SE2d 627) (1996) ("Under the doctrine of transferred intent, when an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent

lor's role in the gun battle, he is not absolved of responsibility simply because he may have fled the scene before the shots struck the victims.[6]

(b) Taylor argues that the state failed to disprove his claim that he fired his weapon in self-defense. But the state presented evidence that the rival groups met to "settle" their dispute, that various members arrived armed, and that the shooting started after Taylor pointed his gun. Under these circumstances, the jury was authorized to reject Taylor's self-defense claim and conclude that he fired his weapon without justification.[7]

(c) Taylor contends that the state did not prove venue in Clayton County. We disagree. A crime scene investigator affirmatively testified that the park where the gun battle occurred is in Clayton County. Such testimony established venue beyond a reasonable doubt.[8]

2. The record shows that Taylor was tried with three co-defendants. He now argues that the trial court erred in denying his motion to sever the trial. We find no error.

In addressing a motion for severance, the trial court should consider three factors:

> (1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and (3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process.[9]

A trial court exercises its discretion in analyzing these factors and resolving the severance request.[10] The fact that one defendant

---

from the one against whom it was directed to the one who actually suffered from it.") (punctuation omitted).

[6] See *Ros v. State*, 279 Ga. 604, 605 (1) (619 SE2d 644) (2005) (defendant gang member who instigated attack on rival gang criminally responsible for death of victim of attack, even though defendant fled the scene before fatal shot was fired).

[7] See *Coker v. State*, 209 Ga. App. 142, 143 (433 SE2d 637) (1993); OCGA § 16-3-21 (b) (3) (person not justified in using force if he "[w]as the aggressor or was engaged in a combat by agreement"). A mutual combatant who withdraws may be justified in using force if the other combatant continues or threatens to use unlawful force, despite the withdrawal. See OCGA § 16-3-21 (b) (3). This principle, however, does not apply here. Although Taylor fled the scene, he fired his weapon multiple times before any possible withdrawal.

[8] See *Bernoudy v. State*, 245 Ga. App. 489, 491 (3) (538 SE2d 150) (2000).

[9] (Citation omitted.) *Green v. State*, 274 Ga. 686, 687-688 (2) (558 SE2d 707) (2002).

[10] See id.

may implicate another in a crime does not require severance.[11] Similarly, unless some prejudice to a defendant's right to due process will result, antagonistic defenses do not mandate severance.[12] "It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed."[13]

Taylor has not made the required showing here. He states generally that the various defendants presented antagonistic defenses and contradicted each other's objections at trial, but he has not demonstrated that his due process rights were prejudiced.[14] Moreover, although he complains that similar transaction evidence admitted against several of his co-defendants may have been improperly considered against him, the trial court instructed the jury about the limited purpose of such evidence. And at one point, the trial court informed jurors: "I've told you how to consider similar transactions. . . . [T]his evidence, if you accept it, applies to only one of the defendants on trial here and should not be considered against the other defendants."

The similar transactions did not involve Taylor, and Taylor has pointed to no evidence that the jury ignored the court's instructions and considered them against him. Finally, we note that Taylor and one of his co-defendants were found guilty of two of five counts, while the other co-defendants were acquitted of all charges. The differing verdicts suggest "that the jury was not confused by the number of co-defendants and that any purported tension between the defenses presented by the co-defendants did not result in harm" to Taylor.[15] The trial court, therefore, did not err in denying the motion to sever.[16]

3. In a related argument, Taylor asserts that the trial court erred in admitting the similar transaction evidence against his co-defendants. Again, however, the trial court limited the jury's use of the evidence, instructing that it could be used only to help determine the bent of mind or intent of the defendant who committed the similar transaction. Taylor was not implicated in the other crimes, and he has not demonstrated that the jury ignored the limiting instructions.

---

[11] Id. at 688 (2).

[12] Id.

[13] Id.

[14] See id.

[15] *Hanifa v. State*, 269 Ga. 797, 806 (4) (505 SE2d 731) (1998).

[16] See *Green*, supra; *Hanifa*, supra; *Taylor v. State*, 285 Ga. App. 697, 699-701 (2) (647 SE2d 381) (2007).

Given these circumstances, we cannot find that Taylor was harmed by the similar transaction evidence. Even if the trial court erred in admitting the other crimes, therefore, reversal is not required.[17]

4. In two claims of error, Taylor argues that both the prosecutor and the trial court improperly referenced biblical scripture during closing arguments. The record shows that at the beginning of his argument, the prosecutor stated: "This is the stage of the trial known as the closing argument. Rather than argue, what I'd like to do is, as it was written in Chapter One, Verse 18 of Isaiah. . . ." Defense counsel interrupted with an objection, and the trial court stated: "The phrase that you were quoting was 'Come and let us reason together' "? When the prosecutor replied, "yes," the trial court overruled the objection.

Taylor challenges the biblical reference on appeal, arguing that the state and the trial court improperly injected religious beliefs or doctrine into the jury's deliberation. To support his argument, he points us to death penalty cases in which the Supreme Court has cautioned prosecutors to avoid "references to religion which invite jurors to base their verdict on extraneous matters not in evidence."[18] Even in death penalty cases, however, a prosecutor may "bring to his use in the discussion of the case well-established historical facts and may allude to such principles of divine law relating to transactions of men as may be appropriate to the case."[19]

The biblical reference at issue here did not invite jurors to base their verdict on extraneous matters. And nothing in the quoted passage urged jurors to reach a verdict on religious grounds. Instead, the prosecutor merely used the passage to encourage jurors to "reason" with him during his closing argument. Although biblical references generally should be avoided, we find no basis for reversal in this case.[20]

5. Taylor claims that the trial court erred in failing to give his requested jury instruction on reckless conduct. Taylor, however, raised a justification defense at trial, arguing that he "fired back" at individuals who shot at him. Through this defense, Taylor conceded

---

[17] See *Hyde v. State*, 291 Ga. App. 662, 664 (2) (662 SE2d 764) (2008) (even if similar transaction evidence is improperly admitted, harm as well as error must be shown to obtain reversal).

[18] *Carr v. State*, 267 Ga. 547, 556 (7) (c) (480 SE2d 583) (1997).

[19] (Citations and punctuation omitted.) *Hill v. State*, 263 Ga. 37, 46 (19) (427 SE2d 770) (1993).

[20] See *Walker v. State*, 282 Ga. 774, 778 (9) (653 SE2d 439) (2007) (biblical references in closing argument of death penalty trial not improper where passages "simply urged the jury to accept its legal duty to pass judgment rather than abdicating that role"); *Hill*, supra.

that his act was intentional, but asserted that he committed the act "for an excusable reason, such as self-defense."[21]

Under these circumstances, the trial court properly refused to charge the jury on reckless conduct. "[T]he crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another."[22] Taylor has pointed to no evidence that his weapon discharged as a result of negligence. Instead, he deliberately shot out of the car several times. He was either guilty of aggravated assault or justified in firing his gun.[23] Reckless conduct was not at issue.

6. Taylor contends that he was denied a fair trial because the state did not turn certain discovery over to the defense at least ten days prior to trial, as required by OCGA § 17-16-4 (a) (1). Specifically, Taylor complains that the state failed to timely produce recordings of jail telephone conversations by Greg Sutton, one of Taylor's original co-defendants who pled guilty at the beginning of trial and testified for the state.

Pretermitting whether a discovery violation occurred, Taylor has not shown any harm. The state did not seek to introduce evidence of the recordings, and, as ordered by the trial court, the prosecutor provided defense counsel with copies during trial. Although Taylor vaguely asserts that the recordings may have been exculpatory, he has not demonstrated that the recordings contained any evidence that would have helped the defense. This claim of error, therefore, lacks merit.[24]

7. Taylor also argues that the trial court erred in failing to answer a question asked by the jury during its deliberations. The record shows that when jurors had not reached a verdict by 5:30 p.m. on the first day of deliberations, the trial court released them for the evening. Following the jury's release, the bailiff gave the trial court a written question from the jury foreperson regarding the aggravated assault charges. The court discussed the question briefly with counsel, then noted that the jury had left for the night and stated: "[W]e'll deal with it at nine o'clock tomorrow morning."

The record from the following day reveals no further discussion about the question, and the trial court apparently never addressed it

[21] *Berry v. State*, 282 Ga. 376, 381 (5) (651 SE2d 1) (2007).

[22] (Citation and punctuation omitted.) *Riley v. State*, 250 Ga. App. 427, 429 (2) (551 Ga. App. 833) (2001).

[23] See *Berry*, supra at 382 (5); *Riley*, supra; *Hall v. State*, 235 Ga. App. 44, 46-47 (4) (508 SE2d 703) (1998).

[24] See *Wilkerson v. State*, 266 Ga. App. 721, 723 (2) (598 SE2d 364) (2004) (state's discovery violation did not give rise to reversible error where defendant showed no prejudice).

with the jury. Asked about the situation at the hearing on Taylor's motion for new trial, trial counsel testified that the judge told him that the jury had sent a note asking the court to disregard the question. Taylor now argues that the trial court erred in failing to address the jury's inquiry.

We find no basis for reversal. Taylor did not object to the court's procedure or its failure to address the question, and he did not ask the court to discuss the matter with the jury. Given the lack of objection, Taylor cannot now complain about the trial court's procedure.[25]

Moreover, the trial judge also recalled at the new trial hearing that the jury foreperson withdrew the question, at which point the judge decided not to answer it. Although a trial court has a duty to recharge the jury upon request from jurors, "the extent and character of any supplementary instructions are within the discretion of the court."[26] And the trial court does not abuse that discretion by limiting its response to the specific question posed by the jury.[27] In this case, the foreperson withdrew the question, leaving nothing to be answered by the trial court. Taylor has cited no authority requiring a trial court to address a withdrawn jury question, and we refuse to impose such a requirement.

8. Taylor claims that the trial court erred in giving jurors an *Allen*[28] or "dynamite" charge when they were unable to reach a verdict. The record shows that after deliberating for approximately five and one-half hours over a two-day period, jurors informed the trial court: "[W]e have people who have firmly made up their minds and we are hopelessly deadlocked" as to the majority of the counts. The trial judge asked them to "keep working and try to reach a unanimous verdict."

After an additional hour of deliberation, the jury sent a second note, stating: "We cannot come to a decision and there are three members of the jury who are not changing their votes." At that point, the trial court gave an *Allen* charge over objection. The jury returned its verdict one hour later, and a subsequent juror poll confirmed that they rendered their verdict freely and voluntarily.

---

[25] See *Hardwick v. State*, 210 Ga. App. 468, 471 (9) (436 SE2d 676) (1993) (failure to object to court's procedure in answering jury question amounts to waiver); *LeMon v. State*, 290 Ga. App. 527, 530 (2) (660 SE2d 11) (2008) (defendant waived any allegation of error regarding recharge by failing to object).

[26] (Citations and punctuation omitted.) *Harrell v. State*, 253 Ga. App. 691, 696 (4) (b) (560 SE2d 295) (2002).

[27] Id.

[28] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

Taylor now challenges the *Allen* charge, asserting that it was coercive and premature. We disagree.

Our Supreme Court has approved an *Allen* charge substantially similar to that used by the trial court.[29] And the charge did not produce an immediate verdict. Jurors continued to deliberate for one hour before reaching their decision. Nevertheless, Taylor claims that the charge was coercive because the court read aloud the jury's note indicating that it was split nine to three. In Taylor's view, the *Allen* charge, combined with publication of the jury's note, put undue pressure on the three dissenters.

As found by the Supreme Court, however, reading "an *Allen* charge after inquiry into the numerical division, where there is no announcement of which way the vote is split, [does] not place undue pressure on the members to abandon their convictions."[30] Given the language used by the trial court, the length of deliberation after the *Allen* charge, and the jury poll indicating that the verdict was freely and voluntarily entered, we find no coercion.[31]

We also reject Taylor's claim that the charge was premature. "It is within the trial court's discretion whether to give an *Allen* charge to a jury in disagreement."[32] The record shows that after deliberating for over five hours, the jury stated that it was deadlocked. The trial court asked the jury to try to reach a verdict, and jurors continued their deliberations for another hour before again indicating that they could not resolve their differences. We find no abuse of discretion in the trial court's decision to give an *Allen* charge at that point.[33]

9. Finally, Taylor claims that he received ineffective assistance of counsel at trial. To prevail on this claim, Taylor must demonstrate that counsel's performance was deficient and that, but for counsel's errors, there is a reasonable likelihood the outcome of the trial would have been different.[34] Ultimately, Taylor must overcome the strong

YALE LAW LIBRARY

---

[29] See *Mayfield v. State*, 276 Ga. 324, 329, n. 4, 330-331 (2) (b) (578 SE2d 438) (2003). In its charge, the trial court avoided the "must be decided by some jury" language rejected in *Burchette v. State*, 278 Ga. 1, 2 (596 SE2d 162) (2004).

[30] *Black v. State*, 255 Ga. 668, 671 (2) (341 SE2d 436) (1986).

[31] See *Burchette*, supra at 3 (polling of jury helped demonstrate that *Allen* charge was not coercive); *Smith v. State*, 275 Ga. App. 60, 65 (6) (619 SE2d 694) (2005) (fact that jury deliberated for approximately one hour after *Allen* charge before delivering verdict demonstrated that jurors did not rush to a conclusion).

[32] (Citation and punctuation omitted.) *Craft v. State*, 254 Ga. App. 511, 517 (8) (563 SE2d 472) (2002).

[33] See id.; see also *Kilpatrick v. State*, 255 Ga. 344, 345 (1) (338 SE2d 274) (1986) ("The length of time a jury may be required to deliberate before giving the *Allen* charge is within the discretion of the trial judge and will not be controlled unless there is a manifest abuse of discretion.") (citation and punctuation omitted).

[34] *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

presumption that trial counsel's conduct fell within the broad range of reasonable professional assistance.[35]

With little or no supporting argument, Taylor lists seven alleged deficiencies in counsel's performance. None supports reversal.

(a) Taylor first argues that counsel was ineffective in failing to request that the charge conference be transcribed. On appeal, however, he has not shown — or even argued — how this alleged failure prejudiced him. He thus cannot demonstrate ineffective assistance on this ground.[36]

(b) Taylor also claims that trial counsel should have made a written request to charge on voluntary and involuntary manslaughter. The record shows, however, that counsel for the various defendants requested these instructions orally, and the trial court considered the oral request on the merits. Although the trial court elected not to give the instructions, Taylor did not enumerate that ruling as error, and he has not shown how the alleged lack of a written request prejudiced his defense.

(c) Next, Taylor contends that trial counsel failed to move for a severance. The record belies this claim. As discussed in Division 2, counsel sought such relief during the trial, and the trial court properly denied the motion. Taylor has not shown or argued that counsel's request was inadequate or that the trial court would have severed the trial had counsel presented the issue differently. Accordingly, he cannot establish ineffective assistance on this ground.[37]

(d) Taylor argues that counsel should have moved in limine to exclude the similar transaction evidence. We have already found that this evidence did not harm Taylor. He thus cannot demonstrate prejudice.[38]

(e) Taylor claims that counsel failed "to voir dire the entire panel regarding a potential juror's statements in order to ensure that the jury was not contaminated." Taylor has presented no further argument, explanation, or citation of authority regarding this alleged deficiency. And he has made no effort to show any likelihood that the outcome of the trial would have been different had counsel conducted further voir dire. Under these circumstances, he has not demonstrated ineffective assistance.[39]

---

[35] Id.

[36] See id. (no ineffective assistance based on counsel's failure to have voir dire transcribed where defendant does not assert that anything harmful or prejudicial occurred during voir dire).

[37] See *Talley v. State*, 269 Ga. App. 712, 713 (2) (b) (605 SE2d 108) (2004) (absent showing that motion to sever offense likely would have been granted, defendant cannot demonstrate ineffective assistance based on counsel's failure to file motion).

[38] See *Goldsby v. State*, 273 Ga. App. 523, 529 (5) (615 SE2d 592) (2005).

[39] See *Munn v. State*, 263 Ga. App. 821, 826 (11) (589 SE2d 596) (2003) (to prevail on

(f) Taylor broadly states — without more — that counsel "failed to preserve several issues for appeal." This type of conclusory statement, unsupported by facts, reasons, or authority, cannot support an ineffective assistance claim.[40]

(g) Lastly, Taylor argues that trial counsel deficiently failed to ensure that the trial court answered the withdrawn jury question discussed in Division 7. As noted above, however, Taylor has not demonstrated that the trial court erred in handling the jury's question or that an objection to the court's procedure would have been successful. This ineffective assistance claim lacks merit.[41]

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 19, 2009 ▆▆▆▆▆▆

*Herbert Adams, Jr.*, for appellant.
*Jewel C. Scott, District Attorney, John M. Turner, Jr., Assistant District Attorney*, for appellee.

---

ineffective assistance claim regarding voir dire, defendant must show actual prejudice).

[40] See *Bacon v. State*, 249 Ga. App. 347, 350 (3) (548 SE2d 78) (2001).

[41] See *Williamson v. State*, 285 Ga. App. 779, 786 (5) (b) (648 SE2d 118) (2007) (failure to make a futile or meritless objection does not constitute ineffective assistance).