296 Ga. 448
FINAL COPY

S14A1482.  STEWART v. THE STATE.

BENHAM, Justice.

William Grant Stewart appeals his convictions for murder and related crimes in regard to the death of his five-month-old son James Antonio Stewart.[1]

We view the evidence in a light most favorable to the jury's verdicts.  On the day in question, appellant called 911 to report that the victim was not breathing.  A sheriff's deputy who responded to the 911 call testified that she found the child lying in his crib, not breathing and without a discernible pulse.  She administered CPR until paramedics arrived.  The paramedics noted the child was exhibiting signs of oxygen deprivation and immediately transported him to

---

[1] The crimes occurred on July 28, 2010.  On March 8, 2011, a Rockdale County grand jury indicted appellant and Matea Mendez Stewart with two counts of malice murder, two counts of felony murder, two counts of cruelty to a child in the first degree, and aggravated battery.  The March 2011 indictment was dismissed, and, on June 28, 2012, appellant and co-defendant were re-indicted on one count of malice murder, three counts of felony murder, two counts of cruelty to a child in the first degree, one count of aggravated battery, and two counts of contributing to the deprivation of a minor.  Appellant and his co-defendant were tried before a jury from September 4 to September 13, 2012, and the jury returned a verdict of guilty against appellant on all counts in the June 2012 indictment.  On October 2, 2012, the trial court sentenced appellant to life in prison without parole for malice murder, twenty years to be served consecutively for one count of cruelty to a child in the first degree, and ten years to be served consecutively for one count of contributing to the deprivation of a minor.  The counts of felony murder were vacated as a matter of law and all other counts merged as a matter of fact into the malice murder conviction.  Appellant moved for a new trial on October 11, 2012, and amended the motion on May 14, 2013.  The trial court held a hearing on the motion for new trial as amended on December 19, 2013, and denied the motion on May 6, 2014.  The case was docketed to the September 2014 term of this Court for a decision to be made on the briefs.

the hospital. At the scene, appellant told the deputy that he and the co-defendant Matea Mendez Stewart, who was the child's mother,[2] had laid the child down for a nap and when they went back to check on him, he was unresponsive and had a blanket or towel over his face. A responding paramedic testified appellant told him that he had last checked on the child "20 minutes ago." Before appellant and the co-defendant left for the hospital, the deputy informed them that their home was a crime scene, and the couple gave their permission for authorities to stay inside the house to investigate. Investigators found reddish-brown stains on stuffed animals inside the child's crib and some reddish-brown stains on a bib and burp cloth located in the couple's bathroom. The stains were later determined to be the blood and DNA of the victim. The treating emergency hospital personnel were able to improve the victim's breathing. The treating emergency physician said she discovered that the child had fractured ribs and a bruised skull. While at the emergency hospital, appellant told police that he laid the victim down and checked on him twice in 30-minute intervals. Appellant said when he checked on the victim the second time, the victim had

---

[2]At trial, the evidence showed that appellant dated and married co-defendant while she was still pregnant with the victim and that the victim was not appellant's biological child.

a towel over his face and was not breathing; at that point, appellant called 911 and administered CPR as instructed by the 911 operator. Co-defendant agreed with appellant's version of events. Appellant gave a written statement to the same effect.

The victim was transferred to a pediatric hospital where it was determined that he was brain dead due to a fracture of his skull and the accompanying hemorrhaging and swelling of his brain. One of the pediatric physicians testified that the brain injury occurred within hours of the child's arriving at the hospital for treatment. In addition to the injuries to his brain and skull, the victim had multiple fractures to 15 out of 24 of his ribs and fractures to all of his extremities. These injuries were at various levels of healing, some more recent than others, and thus led the treating doctors to suspect abuse of the child over a period of time. The evidence showed the injuries to the child's ribs were consistent with being squeezed and some of the injuries to his extremities were consistent with the extremity being "yanked" at an angle. The child also had hemorrhaging of both eyes and a detached retina, indicating he had been subjected to violent force. The forensic pathologist concluded that the fatal

injury was acute, that the victim died from craniocerebral trauma, and that the manner of death was homicide.

At the pediatric hospital, co-defendant told one of the pediatricians that, on the day of the fatal injury, appellant went to shower with the victim and that after the shower the victim had no interest in eating and was "dangly." At trial, co-defendant testified that after the baby had been laid down for a nap, appellant twice went by himself to check on the crying victim and that when she eventually went to check on the victim, she found appellant with the victim who was unresponsive.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant alleges the trial court erred when it failed to grant his motion to sever. Specifically, appellant argues the jury was confused because it returned verdicts of guilt against him on all counts in the indictment, whereas it returned a verdict of guilt against co-defendant only on one count of felony murder predicated on deprivation. In support of his argument that the jury was

4

confused, appellant opines that being punished for felony murder and deprivation of a child is improper, and that the trial court's limiting instructions as to Bruton[3] were problematic.

This Court has held:

> In a capital case in which the death penalty is not sought, a trial court's decision not to sever the trials of co-indictees is reviewed for abuse of discretion, and the movant must make a clear showing that the joint trial was prejudicial and resulted in a denial of due process. The existence of antagonistic defenses alone is insufficient to require the severance of a joint trial.

(Citations and punctuation omitted.) Barge v. State, 294 Ga. 567 (3) (755 SE2d 166) (2014).[4] In this case, we find no abuse of discretion. Rather than being indicative of confusion, the jury's verdicts show that it followed the trial court's instructions and considered the evidence separately as to each defendant and as to each count in the indictment. Any alleged discrepancy regarding punishment for felony murder and punishment for deprivation of a child has no merit. Here, appellant was sentenced for malice murder, and all felony murder convictions

---

[3] Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

[4] See also Coe v. State, 293 Ga. 233 (3) (748 SE2d 824) (2013) (in determining whether to grant or deny a motion to sever, the trial court considers whether the number of defendants creates confusion as to the law and evidence applicable to each; whether there is a danger that evidence admissible against one defendant will be considered against the other; and whether the defenses are antagonistic).

against him were vacated as a matter of law in keeping with Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). As such, his argument concerning the propriety of being punished for both felony murder and deprivation is inapposite. As far as the limiting instructions the trial court gave throughout the trial in order to avoid violations of Bruton, appellant never posited an objection to the instructions based on juror confusion, or any other ground, and so the issue is waived on appeal. See Moore v. State, 286 Ga. App. 313 (3) (b) (649 SE2d 337) (2007).

3. Appellant contends the trial court erred when it admitted a post-autopsy photograph of the victim's brain injuries while the medical examiner was testifying. "A photograph that depicts the victim after autopsy incisions or after the pathologist changes the state of the body is admissible when necessary to show some material fact which becomes apparent only because of the autopsy." (Citations and punctuation omitted.) Norton v. State, 293 Ga. 332 (3) (745 SE2d 630) (2013). Prior to the State's calling the medical examiner to the stand, appellant objected to the admission of the photograph at issue. Outside the hearing of the jury, the trial court reviewed the photograph and heard proffered testimony from the medical examiner as to how the picture depicted the injuries

to the victim's skull and brain and how it would facilitate his explanation of these injuries to the jury. After the proffer, the trial court decided to admit the photograph. Before the photograph was published to the jury, the trial court admonished jurors that the photograph was not being introduced for inflammatory purposes, but rather to assist with their understanding of expert testimony. Over appellant's renewed objection, the photograph was admitted and published. Given that the victim died from the injuries to his skull and brain, the post-autopsy photograph was necessary to show a material fact. Although x-ray and other radiologic images showing the damage to the victim's skull and brain had already been admitted, those images did not display the full extent of the injuries as did the post-autopsy photograph.[5] The trial court did not err.[6]

Judgment affirmed. All the Justices concur.

---

[5] Specifically, the post-autopsy photograph showed the detailed swelling of the victim's brain and the results of that swelling pushing the unfused portions ("sutures") of the baby's skull apart and causing them to break. The medical term for this phenomenon is "diastatic fracture."

[6] Appellant has withdrawn the enumerated error concerning the admission of polygraph test results, and so we will not consider the issue in this appeal.

Decided February 2, 2015.

Murder. Rockdale Superior Court. Before Judge Mumford.

Coxen & Worthington, Beau A. Worthington, for appellant.

Richard R. Read, District Attorney, Roberta A. Earnhardt, Debra M. Sullivan, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.