301 Ga. 286
FINAL COPY


S17A0462.  MATTHEWS v. THE STATE.


BENHAM, Justice.

Appellant Kemra Matthews appeals his convictions for felony murder and related crimes stemming from the death of two-year-old Jadien Harvey and the aggravated assault of four-year-old Ashton Capers.[1]  For the reasons set forth below, we affirm.

---

[1] The crimes occurred on July 11, 2012.  On February 27, 2013, a Clayton County grand jury indicted appellant on charges of felony murder, aggravated assault (Jadien Harvey), aggravated battery (Jadien Harvey, skull fracture), aggravated battery (Jadien Harvey, eye injury), cruelty to children first degree (Jadien Harvey, strike to stomach), cruelty to children first degree (Jadien Harvey, strike to head), aggravated assault (Ashton Capers), aggravated battery (Ashton Capers, spine fracture), aggravated battery (Ashton Capers, left tibia fracture), cruelty to children first degree (Ashton Capers, strike to stomach), and cruelty to children first degree (Ashton Capers, leg fracture). Appellant was tried before a jury on March 10-14, 2014, with the jury returning verdicts of guilty on all charges in the indictment. On March 28, 2014, the trial court sentenced appellant to life without parole for felony murder plus seven concurrent 20-year sentences on the various felony counts that did not merge for sentencing purposes.  On March 28, 2014, appellant moved for a new trial and amended the motion on March 24, 2015. On April 23, 2015, the trial court held a hearing on the motion as amended and denied it on June 10, 2015. Appellant filed a notice of appeal on June 24, 2015. Upon receipt of the record, the case was docketed in this Court and assigned to the term beginning in December 2016.  The case is submitted for a decision to be made on the briefs.

1. Appellant alleges the evidence was insufficient to convict him of the crimes for which the jury returned verdicts of guilty. We disagree. The record, viewed in a light most favorable to upholding the jury's verdicts, shows that the victims, along with their two other siblings, Jaylan Harvey[2] and Kemra Matthews, Jr. ("KJ"), lived with their mother, Ashley Harvey, and appellant, whom the children referred to as "Kem." Whenever Ashley was working and appellant was available, appellant would look after the four children. When both Ashley and appellant were at work, Ashley's cousin, Chynna Martin, and/or Martin's live-in girlfriend, Latrice Aikens, would watch the children in Martin's apartment which was in the same complex as appellant's and Ashley's apartment. Aikens took care of the children on the day before the incident and testified that while Jadien had a cold, he and the other children were otherwise healthy and engaged in normal activities.

On the morning of July 11, 2012, Ashley went to work, leaving appellant to care for the children. At about 10:00 or 10:30 that morning, appellant took the children to Martin's apartment for Aikens to watch the children. Ashton was vomiting when he arrived, and Aikens testified appellant told her that

---

[2] Jadien and Jaylan were twin brothers.

Ashton had vomited back at his apartment earlier that morning. Appellant told Aikens he was going to beat Ashton. Because Aikens had to leave for a doctor's appointment, Martin ended up watching the children. Martin testified that Ashton vomited about seven to eight times for the hour or so he was in her care that morning. When appellant returned to take the children home, Martin gave him some stomach medicine to give to Ashton. Martin said appellant carried KJ, while the other three children walked home. At about 1:00 that afternoon, Aikens went to appellant's apartment. Aikens said Ashton was sitting on the floor next to a plastic garbage bag. He had a plate of ravioli and a bottle of water, but he was still vomiting. Jadien was standing in the corner because, according to appellant, the toddler was being punished for defecating in his pants.[3]

At about 3:00 p.m., appellant showed up at the apartment leasing office. He had an unresponsive Jadien in his arms. The leasing manager called 911 and then went to retrieve the other children whom appellant had left in the apartment. When she saw Ashton, he was walking slowly and holding his stomach. When first responders arrived at the leasing office, Jadien was in

---

[3] Ashley Harvey testified the twins were being potty-trained at the time these events occurred.

cardiac arrest, showing no signs of life from the time paramedics arrived to the time he was pronounced dead at the hospital. Ashton was also taken to the hospital and underwent exploratory surgery for suspected internal injuries. Ashton had a perforated intestine which had to be surgically repaired. Ashton also had a fractured tibia, some injury to his lower spine consistent with being slammed down onto his bottom, and an injury to his genitalia. An expert in child abuse pediatrics testified Ashton's injuries were consistent with physical abuse, particularly in the absence of any explanation of an accidental cause for his injuries.

While recovering in the hospital, Ashton responded to a series of questions posed to him by his maternal grandmother and affirmatively indicated to her that appellant had hit him in his stomach and had hit Jadien. The grandmother reported this information to police. Ashton was subsequently questioned by a number of professionals involved with the case, including a Department of Family and Children Services (DFACS) caseworker,[4] a police investigator trained to interview children, and a forensic interviewer. A DFACS caseworker, who became involved with the family after Jadien's

---

[4] DFACS had opened a case concerning the family pursuant to a complaint made in April 2012. A DFACS caseworker who visited the family on July 9, 2012, two days before the events at issue, testified that the children were in good health as of her July 9 visit.

death, testified that, without any prompting, Ashton told her appellant had hit him in the stomach and had hit his brother. The police investigator testified Ashton told her that appellant had hit him in the stomach because he had vomited, and that appellant had hit him in his genitalia. The forensic interviewer, who was tendered as an expert witness, testified that Ashton told her appellant had hit him in the stomach, the bottom, and on the back. He also told her appellant hit Jadien. The forensic interviewer said Ashton made hand gestures demonstrating how appellant had assaulted him. In addition, the forensic interviewer stated she was 100 percent certain that Ashton had not been coached to make these statements about appellant. The State also presented Ashton as a witness at trial[5] and played for the jury the video recordings of Ashton's two interviews with the forensic interviewer.

The medical examiner testified that Jadien died from blunt force trauma to the head. Jadien also had other injuries, including bleeding in the abdomen caused by blunt force trauma, bleeding in the optic nerve which indicated an acceleration into an object and pulling back, and a linear skull fracture which

---

[5] Ashton, who was six years old at the time of trial, testified appellant hurt him in the stomach.

was consistent with being slammed into a wall.[6] The medical examiner testified the acute head injuries would have immediately rendered Jadien unconscious, or "at best" lethargic, and unable to engage in the normal activities of a healthy toddler such as walking, talking, eating, or playing.

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); Stewart v. State, 296 Ga. 448 (1) (769 SE2d 50) (2015).

2. Appellant contends counsel rendered ineffective assistance by failing to engage and present an expert witness at trial to provide counter testimony to the expert witnesses presented by the State. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

---

[6] On the day in question, authorities found a hole in the wall of appellant's apartment that had not been there when Ashley Harvey left for work that morning.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

Typically, the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance. See Eason v. State, 283 Ga. 116 (4) (657 SE2d 203) (2008). Here, counsel testified at the motion for new trial hearing that she consulted with her supervisor and her colleagues about hiring an expert witness and ultimately decided not to do so. Instead, counsel decided she would use cross-examination and argument to advance a defense theory that Ashton identified a person other than appellant as being the perpetrator by focusing on the child's speech impediment. She also pursued a theory that Ashton was coached into saying what he said about appellant during his interviews. We cannot say this strategic decision was outside the broad range of professional conduct presumed to be reasonable.

Appellant presented a forensic interview expert at the motion for new trial hearing in an attempt to make a proffer in support of his ineffective assistance claim; however, the trial court determined the expert's testimony did

not rebut the testimony of the professionals who spoke to Ashton about the events at bar. The trial court also noted that appellant's proffered expert did not opine that Ashton had been coached. We agree appellant failed to meet his burden of showing his counsel's performance was deficient. See Jones v. State, 296 Ga. 561 (4) (769 SE2d 307) (2015). The trial court did not err when it denied appellant's motion for new trial.

Judgment affirmed. All the Justices concur.


Decided May 30, 2017.

Murder. Clayton Superior Court. Before Judge Benefield.

Vernon H. Smith, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.