305 Ga. 707
FINAL COPY

S19A0174.  BELL v. THE STATE.

BENHAM, Justice.

Appellant Bennie Lorenzo Bell appeals his convictions for crimes related to the death of Henry Stokes and the aggravated assault of Tony Collier.[1]

1.  Appellant alleges the trial court erred when it denied his

---

[1] The crimes occurred on December 28, 2009.  On April 20, 2010, a Richmond County grand jury jointly indicted appellant and Dominique Ellis on charges of malice murder (Stokes), felony murder (Stokes), two counts of possession of a firearm during the commission of a crime, and aggravated assault (Collier).  Appellant was additionally indicted for possession of a firearm by a convicted felon and was given notice that the State would seek recidivist punishment for him.  Following a trial that took place from January 9 to January 11, 2012, the jury returned verdicts of guilty on all charges against appellant, except for the charge of possession of a firearm by a convicted felon, for which charge the trial court entered a judgment of nolle prosequi.  The trial court sentenced appellant to life in prison without parole for malice murder, 20 years to serve concurrently for aggravated assault, and five years to serve consecutively for each count of possession of a firearm during the commission of a crime.  The felony murder count was vacated as a matter of law.  Appellant moved to file a motion for new trial out-of-time, and, upon the trial court's granting that motion, he moved for a new trial on January 15, 2013, and amended the motion for new trial on February 25, 2015, and on October 16, 2015.  On May 27, 2016, the trial court held a hearing on appellant's motion for new trial, as amended, and denied it on June 26, 2018. Appellant filed a notice of appeal on July 6, 2018, and, upon receipt of the record, the case was docketed to the term of this Court commencing in December 2018 and was submitted for a decision to be made on the briefs.

motion for a directed verdict.  This Court has held:

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. When reviewing the sufficiency of the evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.)  *Smith v. State*, 304 Ga. 752, 754 (822 SE2d 220) (2018).  See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Here, the record viewed in a light most favorable to upholding the jury's verdicts shows as follows.  On the night in question, Collier and Stokes were inside Stokes' boarding house room where they sold drugs.  The main entryway door to the boarding house was always locked.  That night, someone knocked on the entryway door, and Stokes answered it.  A neighbor testified he heard the knock, heard someone say, "You straight, you got any," and heard Stokes reply, "Yes."  The neighbor testified he heard two different people in the

hallway with Stokes. The neighbor also stated he heard someone say, "Let me get it all," and heard scuffling, followed by gunshots.

Collier testified he heard a disturbance in the hallway, and then saw Stokes run into the room, spin around, and try to shut the room door. According to Collier, someone slipped his arm through the doorway before Stokes could close it, and fired a gun at Stokes, causing him to collapse. Collier said he grabbed a .22 caliber pistol that was inside the room and opened fire. Collier testified that the arm holding a gun twice came through the doorway and he shot at it each time. After the gunmen left, Collier ran out of the room and outside of the building where he shot at a vehicle that appeared to be driving away from the boarding house. Collier testified he gave the .22 caliber pistol to the maintenance man to hide, told the maintenance man to call an ambulance for Stokes, and then left the scene. Collier went to the police a day later when he learned that police were looking for him.

Investigators recovered several bullets and shell casings from the scene. A ballistics expert testified many of the shell casings and

projectiles were fired from at least two different 9mm handguns (a Hi-Point and a Smith & Wesson).[2] He also testified that .22 caliber shell casings recovered from the scene were fired from the .22 caliber pistol Collier testified he used that night. The medical examiner testified Stokes died of a gunshot wound to the head. The bullet the medical examiner recovered from Stokes' body was fired from the same gun that produced the shell casings from the 9mm Smith & Wesson.

The lead detective testified that authorities learned of appellant's possible involvement in the crime from an incarcerated informant, who said he saw appellant on the night of the shooting. The informant said appellant had a gunshot wound to his right arm. The informant identified appellant out of a photographic lineup and advised authorities of appellant's whereabouts. Authorities arrested appellant on January 12, 2010. Appellant admitted to

---

[2] There were additional 9mm shell casings recovered that were fired from a 9mm gun made by a manufacturer other than Hi-Point and Smith & Wesson.

police that he was at the boarding house to buy drugs, that he entered the boarding house with another person, that he was armed with a firearm, and that he was shot in the arm during the incident.[3] Appellant denied firing his gun, blaming his confederate for firing upon the victims.

Appellant alleges the evidence was insufficient to convict him because, he argues, the State failed to show that he shot at either of the victims. We disagree. This Court has held that

> a person may be found guilty of a crime if [he] directly commits the crime or intentionally aids or abets in the commission of the crime. Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime . . . .

(Citations and punctuation omitted.) *Virger v. State*, 305 Ga. 281, 288 (3) (824 SE2d 346) (2019). Based on the evidence summarized above, the jury was authorized to conclude appellant was guilty, either directly or as a party to a crime, for the death of Stokes and

---

[3] Appellant told authorities he walked around with a small caliber bullet in his arm for days, before pushing it out of his arm himself.

the aggravated assault of Collier.  See id.; *Jackson v. Virginia*, 443 U. S. at 319.

2.  While appellant was sitting in a patrol car, Investigator Brandon Beckman read appellant his *Miranda*[4] rights, and appellant invoked his right to a lawyer.  Investigator Beckman testified he ceased any questioning of appellant.  A few minutes later, Lieutenant Scott Peebles informed appellant that he was going to be charged with murder.  At that point, appellant told authorities he wanted to speak with them without a lawyer.  The police drove appellant to the police station where he signed a waiver of rights form and submitted to an interview, which was partially recorded.  During the interview, appellant made inculpatory statements.  On appeal, appellant alleges his statements to police should not have been admitted because he invoked his right to counsel.  Inasmuch as appellant did not object to the admission of

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

his custodial statements at trial,[5] and, furthermore, was tried before the effective date of the new Evidence Code, he is not entitled to plain error review, or to any other review of this claim. See *Durham v. State*, 292 Ga. 239 (2) (734 SE2d 377) (2012); *Thompson v. State*, 258 Ga. 816 (2) (375 SE2d 219) (1989).

3. Appellant alleges trial counsel rendered ineffective assistance when he failed to object to the admission of his custodial statements on the ground that police were barred from interrogating appellant once he invoked his right to counsel. See Division 2, supra. In order to prevail on a claim of ineffective assistance of counsel, appellant must

> prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). We need not review both elements of this test if the appellant fails to prove one of them. See *Matthews v. State*, 301 Ga. 286, 288 (800 SE2d 533) (2017).

---

[5] There is nothing in the appellate record indicating whether a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), was held regarding these statements to police.

*Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018).

Here, the record shows police stopped asking questions of appellant when he first invoked his right to counsel. Thereafter, the police did not ask appellant any questions; rather, an officer told appellant the nature of the charges against him. At that point, appellant advised officers he wanted to speak to them without an attorney. Soon thereafter, appellant read and signed a waiver of rights. It was only at that point that police commenced interrogating appellant.

There was no error in admitting the statements under the circumstances described above. Merely informing appellant of the charges pending against him after he had invoked his right to counsel did not constitute an interrogation. See, e.g., *Tennyson v. State*, 282 Ga. 92 (3) (646 SE2d 219) (2007) (defendant's inculpatory response to being informed of the charges against him was not the product of police interrogation). Since appellant initiated further

conversation with police after invoking his right to counsel,[6] his custodial statements were admissible.  See *Gardner v. State*, 273 Ga. 809 (4) (546 SE2d 490) (2001).   Accordingly, trial counsel was not deficient for failing to make a meritless objection to the admission of appellant's custodial statements.  See *Green v. State*, 281 Ga. 322 (2) (638 SE2d 288) (2006).

4.   The trial court allowed the State to admit evidence of a January 4, 2010 incident in which appellant robbed an elderly man at knifepoint, stealing the man's wallet and vehicle.  The victim testified at trial, making an in-court identification of appellant.  In addition, the State admitted certified copies of appellant's convictions for the incident.  Appellant alleges the admission of the evidence was erroneous because its only purpose was to show appellant's propensity to commit a crime.

---

[6] *Maryland v. Shatzer*, 559 U. S. 98 (130 SCt 1213, 175 LE2d 1045) (2010) is inapplicable to this case because that case involved *police-initiated* interrogations that occurred after the defendant had invoked his right to counsel and after there had been a break in custody.

Pretermitting whether the trial court erred when it admitted evidence of the similar transaction, admission of the evidence was harmless. See *Peoples v. State*, 295 Ga. 44 (4) (c) (757 SE2d 646) (2014). To test for non-constitutional harmless error, this Court examines whether it is highly probable that the error did not contribute to the verdict. See id. at 55 (quoting *Lindsey v. State*, 282 Ga. 447, 450 (651 SE2d 66) (2007)). Given appellant's admissions that he armed himself and went to the boarding house to buy drugs, the testimony by Collier that he shot at the arm of the perpetrator who fired at Stokes, and appellant's admission that he was shot in the arm during the incident, it is highly probable that the admission of the 2010 incident did not affect the jury's verdict. Accordingly, there is no reversible error. Id. at 58.

Judgment affirmed. All the Justices concur.

Decided April 29, 2019.

Murder. Richmond Superior Court. Before Judge Jolly.

McMillan & Rawlings, Michael S. Howard, for appellant.

Natalie S. Paine, District Attorney, Kevin R. Majeska, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.